**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Civil Case Number:_ 18-cv-62489-Bloom/Valle

Thomas James Lacorazza, Jr.
(Write the full name of the plaintiff)

vs.

City of Pompano Beach, Broward County, FL, U.S.A.;

Broward Sheriff Office, Broward County, FL, U.S.A.; and

Deputy Sheriff Vicente San Roman, B.S.O., in his

official and in his individual capacity
(Write the full name of the defendant/s in this case)

FILED BY ____ D.C.

OCT 16 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

**COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**

**I. Party Information**

A. Plaintiff: Thomas James Lacorazza, Jr.

Address: 980 Greenwood Rd., Weston, FL 33327

Inmate/Prison No.:_ —

*Year* of Birth: 1983 (Do not include day or month, pursuant to Fed. R. Civ. P 5.2)

(Write your name, address and prison/inmate number, if applicable)

vs.

B. Defendant: City of Pompano Beach, FL   Defendant: Broward Sheriff Office

Official Position: Municipal Corporation of   Official Position: County Sheriff Department
Broward County, FL
Place of Employment: Broward County, FL   Place of Employment: Broward County, FL

* (Write the full name of each defendant, official position and place of employment. Attach a
separate page if you need additional space for additional defendants. ): * see below
Defendant: Vicente San Roman
Official Position: Deputy Sheriff
Place of Employment: Broward Sheriff Office, Pompano Beach, FL

Court/Original Copy

# INSTRUCTIONS FOR FILING A
# COMPLAINT UNDER THE CIVIL RIGHTS ACT
# 42 U.S.C., SECTION 1983

This packet includes two forms:
(1)     Complaint Under The Civil Rights Act, 42 U.S.C.§ 1983
(2)     Application to Proceed Without Prepayment of Fees or Costs

To start an action under the you must file:
- an original, signed complaint,
- one copy of the complaint for *each* defendant named in the complaint. For example, if you name two defendants, you file the original complaint plus two copies. You should also keep a copy for your records. All copies of the complaint must be identical to the original, signed complaint.
- filing fee of $400.00 or an Application to Proceed Without Prepayment of Fees/Costs

Return the above forms and/or filing fee to the following address:

Clerk's Office
United States District Court
Southern District of Florida
299 E. Broward Blvd. Ste. 108
Fort Lauderdale, FL 33301

Your complaint must be legibly typewritten or clearly handwritten using a pen (do not use a pencil to complete these form s). As the  plaintiff, you m ust sign and swear to the accuracy of the information in the com plaint. If you need m ore space than is provided on t he form, attach an additional blank page to the complaint.

Your complaint can be brought in this Court only if one or more of the named defendants is located within the Southern District of Florida. Also, you must file a separate complaint for each claim you have unless the claims are related to the same incident or issue.

In your complaint, you must provide the facts; you should not include legal arguments or citations.

## II. Statement of Claim

Briefly describe the facts of your case. Describe how each defendant is involved, names of other persons involved, and dates and pl aces. Each claim should be stat ed in a separately num bered paragraph. Please use short and plain statements, with separately numbered paragraphs indicating why the relief requested should be granted. Do not iclude legal arguments or cite cases or statutes. Attach additional pages, if necessary.

Constitutional and civil Rights violations; statutory law violations; and general law violations

(see complaint)

## III. Relief Requested

Briefly state what you are requesting from the Court (what do you want the Court to do). Do not include legal arguments or cite cases or statutes. Attach additional pages, if necessary.

Declaratory relief;
Injunctive relief;
Punitive damages; and
Compensatory damages

(see complaint)

## II. Statement of Claim

Briefly describe the facts of your case.  Describe how each defendant is involved, names of other persons involved, and dates and places.  Each claim  should be stated in a separately numbered paragraph.  Please use short and plain statements, with separately numbered paragraphs indicating why the relief requested should be granted.  Do not include legal arguments or cite cases or statutes.  Attach additional pages, if necessary.

I was arrested for allegedly being in the beach during prohibited hours (11pm-6am) in the city of Pompano Beach in violation of s. 98.13 of that city's municipal code. Aware of the fact that citizens have a right to resist an unlawful arrest, that "civil infractions" are not arrestable offenses, and that I was, in fact, NOT in the beach in violation of an ordinance as alleged, I exercised my right to resist an unlawful arrest and was subsequently and additionally charged with a violation of §843.02, FL Statutes. See also "Document A"

## III. Relief Requested

Briefly state what you are requesting from the Court (what do you want the Court to do).  Do not include legal arguments or cite cases or statutes. Attach additional pages, if necessary.

I am requesting a declaration stating that 1) V. San Roman's actions violated the Plaintiff's constitutional rights, and in and of themselves were unlawful and 2) the city of Pompano Beach's municipal code penalty section is unlawful, i.e. it is not in accord with Florida law, and that all ordinances subject to the provisions of 'that' section (10.99) are, in effect, unenforceable; an injunction (preliminary and permanent) enjoining enforcement of Pompano Beach municipal ordinances which are subject to the unlawful method of enforcement (s.10.99) until such time in which it is in compliance with Florida law (§162.21(5)); and compensatory and punitive damages. See also "Document A"

**IV. Jury Demand**

Are you demanding a jury trial?        _____ Yes        X̶ No

Signed this ___21st___ day of ___June___ , 20 17

_____
Signature of Plaintiff

I declare under penalty of perjury that the foregoing is truce and correct.

Executed on: ___June 21st 2017___

_____
Signature of Plaintiff

July 31, 2018

# Civil Action for Deprivation of Rights, Defined 42 USC § 1983

The Civil Action for Deprivation of Rights Act, commonly known as Section 1983, was enacted as part of the Civil Rights Act. The Act was intended to provide a private remedy for violations of federal law, it reads:

*Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.*

The Supreme Court has interpreted this Act to allow liability to attach where government officials act outside the scope of the authority granted to them by state law.

**Overview of Section 1983:**

1. Only persons under the statute are subject to liability, not the state, but a state officer can be sued in his official capacity for injunctive relief. Interestingly, a suit against a government official acting in his/her official capacity represents nothing more than a suit against the state. Individual employees of federal, state and local government may be sued for damages or injunctive relief.

2. The definition of acting under the color of state law requires that the defendant have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with then authority of state law" -- such actions may result in liability even if the defendant abuses the position given to him by the state.

3. There is no state of mind requirement for Section 1983 claims but there must be a causal connection between the defendant's actions and the harm that results. In order to hold a local government liable under section 1983, the Supreme Court has interpreted this causation element

to require that the harm be the result of action on the part of the government entity that implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or the result of the entity's custom.

4. Section 1983 is not itself a source of substantive rights, it merely provides a method for the vindication of rights elsewhere conferred in the United States Constitution and Laws. Therefore, a plaintiff may prevail only if he can demonstrate that he was deprived of rights secured by the United States Constitution or federal statutes.

5. There is no requirement that the plaintiff sue in federal court because state courts have concurrent jurisdiction, and the usual rule is exhaustion of administrative and judicial state remedies is not a prerequisite to a section 1983 action. With respect to the extent of damages available, the Supreme Court has noted that the basic purpose of a section 1983 damages award is to compensate the victims of official misconduct, and therefore held that there is no limit on actual damages if they can be proven. But where they are not proved, only nominal damages of $1.00 may be awarded. Punitive damages may also be awarded, but not against a municipality. Injunctive relief is also permitted.

6. States and state agencies are entitled to Eleventh Amendment immunity in federal court, but local governments have no immunity from damages flowing from their constitutional violations, and may not assert the good faith of its agents as a defense to liability.

7. The Civil Rights Acts does not contain a statute of limitations for section 1983 actions, however the Supreme Court has held that the appropriate statute of limitations to be adopted is the state statute applicable to personal injury actions.

8. The Civil Rights Attorney's Fees Awards Act of 1976 provides that one who prevails in a section 1983 action is entitled to recover attorneys' fees.

United States District Court

for the

Southern District of Florida

Thomas James Lacorazza, Jr.

          Plaintiff,

     Pro Se

v.

City of Pompano Beach, Lamar Fisher, Mayor;

Broward Sheriff's Office (B.S.O.), Scott Isreal, Sheriff;

Deputy sheriff Vicente San Roman,

          In his official and in his individual capacity,

          Defendants

-(document title)-

Document A

I.      Jurisdiction and Venue

1.  This is a civil action authorized by 42 U.S.C. 1983 to redress the deprivation, under the color of state law, of rights guaranteed me by the Constitution of the United States. This court has jurisdiction under 28 U.S.C. section 1331 and 1334(a)(3), 28 U.S.C. section 2201 and 2202 for declaratory relief, and 28 U.S.C. section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure for injunctive relief. This court has supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. section 1367.

2.  The Southern District of Florida is the appropriate venue for this action under 28 U.S.C. 1391(b)(2) as the events giving rise to these claims transpired in Pompano Beach, Broward County, Florida, U.S.A.

II.     Plaintiff

3.  The Plaintiff, Thomas James Lacorazza, Jr., is, and for all purposes of this action was, a citizen of the United States and legal resident of Broward County, Florida.

III.    Defendants

4.  City of Pompano Beach, Florida is a municipal corporation, and operates as such, under the provisions of law and authority of the Constitution of the State of Florida under the color of law.

5.  Broward Sheriff's Office (B.S.O.) is the county law enforcement agency operating in the County of Broward and is contracted by Defendant City of Pompano Beach to enforce municipal ordinance and law violations therein under the color of state law.

6.  Vicente San Roman is an employee of Defendant Broward Sheriff's Office (B.S.O.), Pompano Beach, Florida, holding the rank and title of deputy sheriff and duly authorized to execute the functions thereof under the color of state law.

IV.      Facts

7.   See: Exhibit 1

8.   Pompano Beach Code of Ordinances s. 98.01 ("Definitions") defines PARK or RECREATIONAL FACILITY as:

"Any park, recreation activities center, swimming pool, tennis court, or any other area in the city, owned or used by the city, and *devoted* to active or passive recreation, including but not limited to, the Pompano Beach Golf Course, *Public Beach*, Aquatic Facilities, and Recreation Centers/Facilities." (emphasis added) *See* Exhibit 2

9.   Pompano Beach Code of Ordinances s. 98.01 ("Definitions") defines POMPANO BEACH PUBLIC BEACH as (in pertinent part):

"That portion of the beach bounded...;on the west by the sidewalk on the east side of North Pompano Beach Boulevard;..." *See* Exhibit 2

10.  Webster's New World Dictionary (ISBN: 978-1-4767-0504-0) defines "extension" as:

"**3** a part forming a continuation or addition"

11.  Pompano Beach Code of Ordinances s. 98.02 ("Prohibited Acts") subdivision D provides (in pertinent part):

"It shall be unlawful for any person to do any acts hereafter set out on the recreational facilities described in s. 98.01 or on *other properties described subsequently herein*."; "...the east side of Pompano Beach Boulevard, in the *right of way* thereof consisting of the curb, gutter, grass, sidewalks, or *other public improvements* adjacent thereto, but not including the west side of Pompano Beach Boulevard." (emphasis added) *See* Exhibit 3

12.  Webster's New World Dictionary (ISBN: 978-1-4767-0504-0) defines an "adjacent" "public" "improvement" as:

"**2** an addition or change that improves something" "**2** for the use or benefit of all" "near or close (to); adjoining" [the sidewalks, curb, gutter, or grass]

13.  The sign on the south side of the "public improvement" (bridge) posted by the city of Pompano Beach reads:

"Pompano Beach *Beach Access*" (emphasis added) *See* Exhibit B

14.  The Plaintiff was located on the "public improvement" "*beach access*" bridge when approached by Defendant San Roman.

15.  Pompano Beach Code of Ordinances s. 98.13 ("Municipal Beaches and Parks; Hours and Permits") provides (in pertinent part):

"(A).... The municipal beach and the *designated* rights-of-way listed in s. 98.14 shall be open daily from sunrise to 11:00p.m. Signs specifying closing hours shall be posted prominently at each facility. It shall be unlawful for any person,

other than city personnel, conducting city business therein, to occupy or be present in any park, public beach, or _designated_ right-of-way at any time when the facility is not open to the public,...”; “Penalty, see s. 10.99” (emphasis added) *See* Exhibit 4

16. Pompano Beach Code of Ordinances s. 10.99 (“General Penalty”) provides: *See* Exhibit 5

17. Florida Statute section 162.21 -”Enforcement of county or municipal codes or ordinances; provides; penalties”- provides (in pertinent part):

“(5) A county or a municipality is authorized to enforce codes or ordinances under the provisions of this section and may enact an ordinance establishing procedures for the implementation of such provisions, in a schedule of violations and penalties to be assessed by code enforcement officers. If a county or municipality chooses to enforce code or ordinances under the provisions of this section, each code or ordinance or the ordinance enacted by the county or municipality establishing procedures for the implementation of this section _shall_ provide:

(a) That a violation of a code or an ordinance is a _civil infraction_.

(b) A maximum _civil_ penalty not to exceed $500.

(c) A _civil_ penalty of less than the maximum _civil_ penalty if the person who has committed the _civil infraction_ does not contest the citation.

(d) For the issuance of a citation by a code enforcement officer who has reasonable cause to believe that a person has committed an act in violation of a code or an ordinance.

(e) For the contesting of a citation in a county court.

(f) Such procedures and provisions as are necessary to provide for the enforcement of a code or an ordinance under the provisions of this section.” (emphasis added) *See* Exhibit 6

18.     Florida Constitution, Article I, section 18 (“Administrative Penalties”), provides (in pertinent part):

“No administrative agency,..., shall impose a sentence of imprisonment, nor shall it impose _any other penalty except as provided by law_.” (emphasis added) *See* Exhibit 7

19. “Lawful execution of any legal duty” is an element to the crime of Resisting Officer Without Violence to His or Her Person - (F.S.A. 843.02).

20. Defendant San Roman was on duty as a deputy sheriff of the Broward Sheriff's Office in his individual, and in his official, capacity in the City of Pompano Beach with an oath-sworn duty to enforce and uphold the law on the morning of October 29th, 2015.

21. Defendant San Roman executed a "choke hold" maneuver on Plaintiff Lacorazza, Jr., applying pressure and force to Plaintiff's hyoid bone with his (Defendant San Roman) causing injury to Plaintiff's neck and throat area. *See* Exhibit 8

22. The Plaintiff was unarmed.


V.      Legal Claims

23. I, the Plaintiff, re-allege and incorporate by reference paragraphs 1-22 and all included evidentiary documents.

24. The Plaintiff was not subject to a lawful arrest by being located on the "public improvement" "beach access" right-of-way bridge, which, by definition, 1) constitutes an "extension" of the sidewalk, and is, therefore, outside of the boundary line of the beach as defined in s. 98.01 and 2) is an "other property" "described subsequently" as a right-of-way not listed in s. 98.14, and distinguished from inclusion to "recreational facilities" which does, contrarily, include the municipal beach.

25. By not adhering to the provisions set forth in F.S.A. 162.21(5), s. 10.99 of the Pompano Beach Code of Ordinances is legally insufficient and constitutionally violative with respect to Art. I, s. 18, FL Const., wherein it has been authorize penalties other than that which has been "provided by law"; rendering said section to be a nullity and enforcement of s. 10.99 to be an unlawful method of enforcement and making Defendant San Roman's actions furthermore outside of the scope of being within the "lawful execution of any legal duty".

26. "The term "arrest" with regard to municipal ordinance violations has been interpreted by the Florida Supreme Court to mean detention for the limited period of time in which to issue a citation for conduct which is essentially decriminalized" [and NOT full custodial arrest]. *See* State v. Thomas, 614 So.2d 468 (Fla. 1993); Mr. John C. Dellagloria, Fla. AGO 2004-50 (2004)

27. "It is the rule that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way." *See* Mr. John C. Dellagloria, Fla. AGO 2004-50 (2004); Thayer v. State, 335 So.2d 815, 817 (Fla. 1967)

28. Pompano Beach derives its authority to enforce municipal codes and ordinances from F.S.A. 162.21 and having been so authorized, "once a municipality has adopted the procedures of Chapter 162 to enforce its municipal codes and

ordinances, it may not alter or amend those statutorily prescribed procedures but must utilize them as they are set forth in the statutes." *See* Mr. John C. Dellagloria, Fla. AGO 2004-50 (2004)

29. "Legality of arrest is element of offense of resisting arrest without violence." *See* Bratcher v. State, 727 So.2d 144 (1999)

30. "In a prosecution for resisting arrest without violence, proof of the legality of the arrest is an essential element which must be shown by the prosecution." *See* Lee v. State, 368 So.2d 395 (1979)

31. "A law enforcement officer,..., is not justified in the use of force if the arrest or execution or a legal duty is unlawful and known by him or her to be unlawful." *See* F.S.A. 776.051(b)

32. "Police Mistakes of Law, 61 Emory L.J. 69" states:

    "As the Michigan Supreme Court observed in 1885: "An officer of justice is bound to know what the law is, and if the facts on which he proceeds, if true, would not justify action under the law, he is a wrong-doer.""; and

    "A seizure based on a "belief that the law has been broken," as the Seventh Circuit has noted, "when no violation actually occurred, is not objectively reasonable,..."." *See* Police Mistakes of Law, 61 Emory L.J. 69, (para. **B**)

33. The defendant cumulatively and severally conspired to commit a false arrest, battery (aggravated), false imprisonment, and malicious prosecution, among other violations, based on an erroneous interpretation and application of law and falsified police report stemming from actions by the Plaintiff that were in no way unlawful; (V Amendment Due Process Violation)

34. Defendant City of Pompano Beach's allowance for full custodial "immediate arrest and *confinement*" is, in effect and substance, violative of the Art. 1, section 18 (FL Const.) administrative agency prohibition against imposition of a sentence -by proxy- of imprisonment. *See* Exhibit 5 (10.99(E))

35. Defendant City of Pompano Beach's provision for "full custodial" "immediate arrest and confinement" is, in effect and substance, and accomplished by proxy, violative of Article I, section 18, FL Const., prohibition against imprisonment by an administrative agency and IV Amendment prohibition against unreasonable searches and seizures. *See* Thomas v. State, 614 So.2d 468 (Fla. 1993); HN [5]

36. Defendants jointly and severally violated Plaintiff's IV Amendment right to be free from unreasonable searches and seizures of his person and property having, himself, along with his property, been seized without consent and without "objectively reasonable" grounds the Plaintiff suffered injuries "similar to that of a person who had been in a car accident." *See* Exhibit 8

37. Defendants jointly and severally violated Plaintiff's right to be free from the deprivation of life, liberty, or property without due process of law as outlined by V Amendment of the Constitution of the United States in executing, unlawfully and absent objective reasonableness, a full custodial arrest and incarceration of the Plaintiff's person and seizure of his property where Plaintiff violated no laws, codes, or ordinances, which would warrant due process of law.

38. Defendants jointly and severally violated Plaintiff's VIII Amendment right to be free from cruel and unusual punishment in inflicting upon Plaintiff punishment for lawful behavior and while Defendants' actions were not "objectively reasonable" by unlawfully arresting, unlawfully imprisoning, and using physical force, causing injury, to Plaintiff.

39. Defendants jointly and severally violated Plaintiff's I, IV, V, and VIII Amendment rights without Plaintiff having violated any code, ordinance, or law, as well as in that others present in the right-of-way, as described in s. 98.02 and without the beach as defined in s. 98.01 of the Pompano Beach Code of Ordinances at the same time and in the same manner as Plaintiff were not subjected to enforcement of said municipal code.

40. Through the actions of Defendant San Roman, Defendants jointly and severally violated Plaintiff's well established right to freedom of speech as secured by I Amendment of the Constitution of the United States where causal manifestation arises from Plaintiff's "ah-ha!" 'taunt'. *See* Exhibit 1

41. Defendant City of Pompano Beach is liable as implementor and executive progenitor of officially adopted and promulgated regulation, ordinance, and policy: "Monell Claim".

42. Plaintiff, Thomas James Lacorazza, Jr., has no plain, adequate, or complete remedy at law to redress the wrongs effectuated upon him and described herein.

43. Plaintiff has been irreparably injured by the conduct executed with callous indifference and utter disregard to Plaintiff's rights and the law by Defendants without this Court granting the relief sought by Plaintiff in this action.

44. The informations above are stated on information and belief.

VI.     Prayer for Relief

WHEREFORE, Plaintiff Lacorazza, Jr. prays this Court grant the following relief:

(1)  Enter an order for Declaratory Relief that:

a. Plaintiff Lacorazza, Jr. has been subject to the illegal, unlawful, and unauthorized procedures for his arrest and prosecution

b. Defendants City of Pompano Beach, Broward Sheriff's Office, and Deputy Sheriff Vicente San Roman are liable to Plaintiff

c. As a direct and proximate result of the above-referenced violations Plaintiff Lacorazza, Jr. has suffered damages

d. There is an actual, *bona fide* controversy between Plaintiff Lacorazza, Jr.'s contention that the procedures outlined herewithin and above are unlawful and unconstitutional in violation of the United States Constitution, whereas Defendants presumably contend that the procedures, actions, and prosecutions outlined herewithin and above are valid, lawful, and constitutional;

(2) Enter an order preliminarily and permanently enjoining Defendants from enforcing the Pompano Beach Code of Ordinances in the unlawful and unconstitutional manner described herewithin and above;

(3) Enter an order for Compensatory Damages;

(4) Award Punitive Damages (Defendant San Roman);

(5) Award Court costs in prosecuting this action, and any additional relief this Court deems jus, proper, and equitable.

VII.    Citations

A. Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978); Lozman v. City of Riviera Beach, 39 F.Supp.3d 1392 (2014) -"...can be held liable under s. 1983 only if alleged constitutional violations resulted from the execution of the City's own policies." (Monell Claim)

B. Monroe v. Pape, 365 U.S. 167 (1967) -Need to show that the person you sue was working for some part of state or city government at the time of the acts you're suing about.

C. Giron v. Corrections Corporation of America, 14 F.Supp.2d 1245 (D.N.M. 1998) -"performing traditional state function" making all defendants involvements "under color of state law".

D. Gittens v. New York, 504 N.Y. S.2d 969 (Ct.Cl.1986) -False imprisonment claim elements: (1) the defendant intended to confine you, (2) you were aware of the confinement, (3) you did not consent to the confinement, and (4) the confinement was not otherwise privileged.

E.  Hudson v. McMillian, 503 U.S. 1 (1992) -The court held that a[n] [officer's] use of force violates the Eighth Amendment when it is not applied "in a good faith effort to maintain or restore discipline" but instead is used to "maliciously and sadistically cause harm".

F.  Farmer v. Brennan, 511 U.S. 825 (1994); Wilson v. Seiter, 501 U.S. 294 (1991) -You must meet *both* "objective" and "subjective" requirements; Objective-you need to show that you were deprived of a basic human need or exposed to serious harm; Subjective-you must show that the official that you are suing knew you were being deprived or harmed and did not respond responsibly. (Eighth Amendment Standard)

G.  Lewis v. Casey, 518 U.S. 343 (1996) -The Supreme Court stated that in order to get an injunction, a [person] must show "actual or imminent injury".

H.  Pembaur v. Cincinnati, 475 U.S. 469 (1986) -You can sue a city, or any other municipality, for an injunction or damages where the violation of your rights was the product of a city's official policy or unofficial custom.

I.  Meyers v. Baltimore County, Md., 713 F.3d 723 (2013) -Fourth Amendment prohibits police officers from using force that it "excessive" or not "reasonable" in the course of making an arrest.

J.  Covington v. City of New York, 171 F.3d 117 (1999) -If success on Plaintiff's s. 1983 claim would necessarily have implied the invalidity of any conviction which might have resulted from the state criminal proceedings relating to arrest, the plaintiff's false arrest claim would not accrue, for limitations purposes, until after that criminal prosecution was dismissed on speedy trial grounds.

K.  V.B. v. State, 959 So.2d 1252 (Fla. 3rd DCA, 2007) -"The state failed to prove V.B. had constructive notice against trespassing by way of "fencing". Fenced land is defined as "land which has been enclosed by a fence of substantial construction, whether with rails, logs, posts and railing, iron, steel barbed wire, other wire, or other material, which stands at least 3 feet in height" s. 810.11(7), Fla. Stat. (2006). In this case, the evidence showed that the park was not "enclosed" by fencing in that there is an open pedestrian passageway that has no gate or closing apperatus. Because the park was not adequately enclosed so as to meet the statutory requirement of "fenced land", and because there was no evidence that the park had the requisite "No Trespass" notices, the State failed to meet its burden of establishing that V.B. had constructive notice that the park was closed."

L.  S.N.J. v. State, 17 So.3d 1258, 1260 (Fla. 2nd DCA, 2006) -"The officer could have asked the juveniles to leave the property, thereby giving them a warning under the statute, without knowing their names. *See Slydell*, 792 So.2d at 673 (holding that

until the officer had reasonable suspicion of trespassing, defendant could refuse to give his name.) That apartment cmplex

had a no-loitering policy in its leases does not validate S.N.J.'s and S.F.'s detention. *See id.* at 672 (holding an pfficer's bare

suspicion that a person is trespassing insufficient for an investigatory stop and detention, even when coupled with an

agreement between the property owner and the police for officers to stop and investigate unfamiliar persons); *B.M.*, 553

So.2d at 715 (holding that police authority absent posted trespass warning "was limited to conveying an order to depart

the premises"). The record does not indicate that the juveniles knew of the policy. At most, the officer's encounter with

S.N.J. and S.F. was consensual. *See Popple v. State*, 626 So.2d 185, 186 (Fla. 1993)…An individual may refuse to identify

herself to a police officer when she has not been lawfully detained."

M.  F.S.A. 810.11

N.  Byron Harris v City of Boynton Beach, et al, (unknown citation) –Plaintiff awarded $600,000.00 for excessive force during

arrest claim.

O.  Gary Kollin v. Broward Sheriff's Office (unknown citation) – Plaintiff awarded $1,100,000.00 in false arrest and false

imprisonment claim case wherein charges were dropped and Plaintiff therein suffered and/sustained *no* physical injuries

during that unlawful arrest and other constitutional rights violations.

P.  Thomas v. State, 614 So.2d 468 (1993) -all

Q.  28 U.S.C.A. 2501 –Time for filing suit: "*Every* claim of which the United States Court of Federal Claims has jurisdiction shall

be barred unless the petition thereon is filed *within six years* after such claim first accrues."


Verification

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on

information and belief, which, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true

and correct.


Thomas James Lasorazza, Jr.                                   8/7/2018

Exhibit 1

II. Statement of Claim (cont.)

On the morning of October 29th, 2015 I was walking on the North side of Atlantic Blvd. in Pompano Beach, Florida. In the middle of the roadway of the parking lot on the Northwest corner of Atlantic Blvd. and N. Pompano Beach Blvd. were two Broward Sheriff's Office marked patrol vehicles. Having violated no law(s) and having had no intention of doing so, I disregarded them and continued walking, crossing the street (Pompano Beach Blvd.) and began walking North on the sidewalk on the East side of N. Pompano Beach Blvd. As I was walking, one of the deputies, deputy sheriff Vicente San Roman (San Roman), pulled up alongside me in his vehicle and told me that "the beach is closed" to which I replied: "Okay, I'm not going to the beach", and continued on. As I did that, he proceeded to follow alongside me in his vehicle. About halfway "down" N. Pompano Beach Blvd. (at the pier), with him still following alongside me in his vehicle, I paused near a 'couple' (a guy and a lady; yes, there was other people in the area at the same time just as I was), and said to them loudly enough to be heard by the officer whose passenger-side window was down, and whom had stopped when I stopped near the couple: "could you tell 'this' dude to stop stalking me?"; as at that point, I was feeling harassed, threatened, and the officer was attempting to intimidate me. They -the couple- said nothing in response, looked at the officer in his car, then looked back at me, and resumed walking South upon the sidewalk on the East side of N. Pompano Beach Blvd. I also resumed walking at that point, continuing North upon the sidewalk on the East side of N. Pompano Beach Blvd. San Roman, once again, began following alongside me in his vehicle. After passing the pier, with him still "following" me, I came to one of the "grass areas" in the area (s. 98.02(D) of the Pompano Beach Municipal Code of Ordinances) and thought that if I were to stop walking and sit down there he would 1) see that I'm not going to the beach, 2) stop "following" me, and 3) leave me alone. Upon my doing so he iterated that "the beach is closed" which I this time responded to with stating that "I am not in the beach". Not feeling comfortable with the then situation, however, and looking to *avoid* problems with an officer whom was seemingly looking to further create some, I got up and continued walking North along N. Pompano Beach Blvd., which eventually ends at a junction with N. Ocean Blvd, which continues North. Again, San Roman "followed" alongside me.

At the area of N.E. 5th St. -yes, 'this' went on for five (5) blocks- there is a "beach access" bridge (Exhibit B; and s. 98.02(D) "…public improvements…") that extends the sidewalk and traverses the dunes allowing for entry into the beach with stairs upon

which I sat down. At my doing that, San Roman stopped his vehicle, watched me sit down, said nothing to me, and then proceeded by turning his vehicle around driving South on A1A/N. Ocean Blvd. away from my location. While sitting there, after about fifteen minutes or so, I thought to myself: "Man, I know he's going to come back to see if I went to the beach." Within a minute of that thought, sure enough, he did just that. As he was passing by I shouted out to him: "Ah-hah, I'm still here. I didn't go to the beach. Ah-hah, I'm still here!" (NOT illegal), because, frankly, screw him for harassing me like that for no reason. At my "taunt", he made another, more aggressive U-turn, parked his vehicle alongside the sidewalk facing toward the South in the North bound lane of N. Ocean Blvd.; got out (with gloves already on!); approached me; grabbed a blanket that I had over me, pulling it away; and began an assault upon my person in his attempt to unlawfully arrest and subsequently imprison me for an alleged municipal ordinance violation (see: Thomas v. State, 614 So.2d 468 (1993)) of which I did not commit. A struggle ensued for a couple of minutes, with other deputy sheriffs arriving at the scene, where, after placing me into several, including a choke, "holds" they were able to take me to the ground and place me in handcuffs. The property that I had with me was taken into their possession, also. Upon my inquiry as to the cause of my unlawful arrest to San Roman, I was told by him that it was "for being stupid".

I was charged with a violation of a municipal ordinance (s. 98.13 Of the Pompano Beach Code of Ordinances), and Resisting Officer Without Violence to His or Her Person (F.S.A. 843.02).

After being bonded out of jail and retrieving my property from the Broward Sheriff's Office property storage facility, a number of items were missing.

Print

Pompano Beach, Florida Code of Ordinances

## § 98.01  DEFINITIONS.

For the purpose of this chapter the following definitions shall apply unless the context clearly indicates or requires a different meaning.

**EVIDENCE OF RESIDENCY.**   As used in this chapter and relating to discount fees for all municipal facilities, may be established upon producing a current government issued photo identification and proof of any of the following:

(1)  Presentation of a declaration of domicile recorded in the Public Records of Broward County or a Broward County voter's registration card, which shows that the individual resides within the corporate limits of the City of Pompano Beach.

(2)  Proof of property ownership, a copy of a current and validly executed lease agreement, copies of the most recent water, electric, gas or other utility bills, which demonstrate that the individual resides within the corporate limits of the City of Pompano Beach.

**MEMBER.**   Any person who holds a playing privilege; members shall have no rights or privileges other than the playing period.

**PARK** or **RECREATIONAL FACILITY.**  Any park, recreation activities center, swimming pool, tennis court, or any other area in the city, owned or used by the city, and devoted to active or passive recreation, including but not limited to, the Pompano Beach Golf Course, Public Beach, Aquatic Facilities, and Recreation Centers/Facilities.

**PERMIT.**  An administrative or recreation facility document granting an individual or organization exclusive use of a City of Pompano Beach park and playground facility which is normally open to the public.  The permit shall set forth the terms and conditions for use in accordance with approved policies and procedures.  Additionally, the applicant shall be required to comply with all applicable laws and ordinances.

**POMPANO BEACH PUBLIC BEACH.**   That portion of the beach bounded on the north by a line 19.6 feet south of and parallel to the south lot line of lot 4, Silver Beach, which boundary is also the south property line of 504 North Ocean Boulevard; on the west by the sidewalk on the east side of North Pompano Beach Boulevard; on the south by the north lot line of lot 2, block 1, Blount Brothers subdivision, this line also being the north line of the property located at 8 Briny Avenue; on the east by the Atlantic Ocean. Excluded from the above description is the existing Pompano Beach Fishing Pier and its adjacent parking lot.  The public beach shall also include those areas set forth in § 98.14 of the Pompano Beach Code of Ordinances.  The terms municipal beach, public beach, and municipal public beach as used in this chapter are synonymous.

**PUBLIC EVENT.**

(1)  Any organized formation, parade, procession, or assembly consisting of persons, animals, vehicles, or any combination thereof, traveling in unison and with a common purpose upon any public street, highway, alley, sidewalk, or other public way which does not comply with normal and usual traffic regulations or controls; or

(2)  Any other organized activity or set of activities conducted by an individual, group, or entity for a common or collective use or benefit including, but not limited to, events providing food concessions and/or alcoholic beverages, utilizing vendors or charging admission to invitees, and which involves the use of public facilities and the possible or necessary provision of city services ancillary thereto, including, but not

limited to, the need for security, road closures, Fire Rescue inspection/personnel, Public Works personnel, and the need for a building permit.

(3) *CITY PUBLIC EVENT* is an event with is initiated, financed and executed by the city and approved by the City Commission. Examples of *CITY PUBLIC EVENTS* include the Annual Nautical Flea Market, July 4 Celebration, Music Under The Stars and the Annual Yuletide Celebration. It does not include events in which the city is merely listed as a co-sponsor.

*PUBLIC EVENT COMMITTEE.* The *PUBLIC EVENT COMMITTEE* shall review all public event applications to approve or disapprove and set conditions for any such event based upon the criteria set forth in this chapter. The *PUBLIC EVENT COMMITTEE* shall be comprised of representatives as appointed by the City Manager from the following departments: Public Works, Parks, Recreation and Cultural Arts, city's law enforcement agency, Risk Management, Development Services and Fire Rescue.

('58 Code, § 33.04) (Ord. 713, passed 7-28-59; Am. Ord. 65-32, passed 3-8-65; Am. Ord. 78-28, passed 1-31-78; Am. Ord. 81-31, passed 1-27-81; Am. Ord. 88-67, passed 6-14-88; Am. Ord. 88-74, passed 7-19-88; Am. Ord. 89-96, passed 9-19-88; Am. Ord. 90-2, passed 9-19-89; Am. Ord. 93-23, passed 2-9-93; Am. Ord. 2012-12, passed 11-22-11; Am. Ord. 2014-27, passed 2-25-14)

Exhibit 3

Print

Pompano Beach, Florida Code of Ordinances

## § 98.02  PROHIBITED ACTS.

It shall be unlawful for any person to do any acts hereafter set out on the recreational facilities described in § 98.01 or on other properties described subsequently herein.

(A)  Sell, peddle, or carry on any business on or within 50 feet of the municipal public beach and any park.  This provision shall not apply to persons having express permission to do so from the City Commission or its authorized agents or personnel.

(B)  Engage in or play ball or any other games or activities on the municipal beach or at the municipal swimming pools wherein a hard ball or hard object is used which might endanger persons upon the beach or in the swimming pools except in designated activity areas, clearly marked, and under the control of the lifeguard supervisor as to type of activity permitted.

(C)  Fish or surf cast from any part of the municipal beach between the hours of 9:00 a.m. and 6:00 p.m. on any day. Fishing on beach street ends is exempted from this prohibition with the exception of SE 2 Street and SE 4 Street.

(D)  Take, carry, lead, or permit dogs or other pets to come on any recreational facilities, including the east side of Pompano Beach Boulevard, in the right-of-way thereof consisting of the curb, gutter, grass, sidewalks, or other public improvements adjacent thereto but not including the west side of Pompano Beach Boulevard.  However, this restriction shall not apply to any such facility which permits dogs or to any service dog as defined by federal or other applicable law or standards for such dogs.

(E)  (1)  Drive or operate motor vehicles on the municipal recreation facilities or the municipal public beach; however, this provision shall not apply to regular employees of the city working under the direction and supervision of the city, nor to operation by any person of any motor vehicle for which permission to operate on a specific recreation facility has been granted by the City Commission.

(2)  Park in non-designated parking areas including grassy areas and around park pavilions.

(F)  Solicit for commercial photographers or take pictures in connection with commercial photography upon the municipal recreational facilities unless invited to do so by the person desiring that the picture be taken.

(G)  Dress or undress, either by changing from ordinary street clothes into bathing or beach attire, or from beach attire into ordinary street clothes, on the municipal  beach  or  municipal swimming pools or while riding in a motor vehicle on any public street or park in the city.  This provision shall not apply to children under the age of six years, nor to restrooms or locker rooms provided for that purpose by the city.

(H)  Throw, place, deposit, sweep, or scatter, or cause to be thrown, deposited, swept, or scattered any paper, food, trash, fruit peeling, or other refuse on a municipal beach or any other municipal recreational facility, or on any street, sidewalk, alley, vacant lot, or municipal area near any municipal recreational facilities.

leave the pier when ordered to do so by the city or its duly-authorized employees or agents, including the pier lessee.  In the event that one person is so required to leave the pier as many as three times by reason of the foregoing or by reason of the violation of any rule, regulation, or ordinance governing or pertaining to the use of the pier, then in that event, the person shall be permanently barred from the use of the pier, and if the person possesses an annual pass for admission thereto, the unused portion of it, dating from the time of the last expulsion to the expiration date of the pass, shall be refunded to the person.  The City Manager and the pier lessee are hereby granted the authority to temporarily bar from the pier any person or persons violating the ordinance, rules, and regulations governing or pertaining to the use thereof, for a period up to one month for each of the first two violations.

   (14)   Restricted area for minors after 7:00 p.m.  No person under the age of 18 shall be permitted in any area licensed for the sale and consumption of alcoholic beverages after 7:00 p.m.

   (15)   Consumption of food.  It shall be prohibited to consume food west of the tackle shop except in those areas specifically designated and licensed for food sale and consumption.

   (16)   Parking of motorcycles, and similar vehicles.  Motorcycles, motorbikes, mopeds, and bicycles shall be parked only in those areas specifically designated for motorcycle, motorbike, moped, and bicycle parking, and no such vehicle or device shall be operated on or otherwise brought onto the pier.

   (17)   Coin-operated games.  It shall be unlawful for any person, firm, or corporation to install or operate any mechanical amusement device or machine which, upon the insertion of a coin, slug, token, plate, or disc, is operated generally for use as a game, entertainment, or amusement, whether or not registering a score, and which includes such devices as marble machines, pinball machines, skill ball, mechanical grab machines, and all games, operations, or transactions similar thereto under whatever name they may be indicated, without the prior written consent of the pier lessee and the City Commission.

   (B)   Any person violating any provision of this section shall, upon conviction thereof, be punished.

('58 Code, § 33.042.1) (Ord. 64-46, passed 2-25-64; Am. Ord. 70-13, passed 1-6-70; Am. Ord. 79-24, passed 12-19-78; Am. Ord. 79-40, passed 3-27-79; Am. Ord. 2012-12, passed 11-22-11) Penalty, see § 10.99

## § 98.13  MUNICIPAL BEACHES AND PARKS; HOURS AND PERMITS.

   (A)   All municipal parks shall be open daily to the public from sunrise to sunset; provided, however, that lighted facilities designated by the City Manager or his designee for night-time activities may remain open until 11:00 p.m.  The municipal beach and the designated rights- of-way listed in § 98.14 shall be open daily from sunrise to 11:00 p.m.  Signs specifying closing hours shall be posted prominently at each facility.  It shall be unlawful for any person, other than city personnel conducting city business therein, to occupy or be present in any park, public beach, or designated right-of-way at any time when the facility is not open to the public, unless a permit authorizing the use for a particular purpose has been granted by the Recreation Programs Administrator as provided in division (B) below.  Any section or part of a park may be declared

closed to the public by the Recreation Programs Administrator at any time and for any interval of time, either temporarily or at regular or stated intervals.

(B)   Whenever any group, association, or organization desires to use the parks or municipal beach for a particular purpose during the hours the park and the beach are closed to the public, a representative of the group, association, or organization shall first obtain a permit from the Recreation Programs Administrator.

(1)   A representative of the group, association, or organization seeking issuance of a permit hereunder shall file an application fee in the amount of $25. The application shall state the following.

(a)   The name and address of the applicant.

(b)   The name and address of the group, association, or organization sponsoring the activity, if any.

(c)   The day and hours for which the permit is desired.

(d)   The portion of the park or municipal beach for which the permit is desired.

(e)   An estimate of the anticipated attendance.

(f)   Any other information which the Recreation Programs Administrator shall find reasonably necessary to a fair determination as to whether a permit should be issued hereunder.

(2)   The Recreation Programs Administrator shall issue a permit hereunder when he finds the following.

(a)   The proposed activity or use of the park or municipal beach will not unreasonably interfere with or detract from the promotion of public health, welfare, safety, and recreation.

(b)   The proposed activity or use is not reasonably anticipated to incite violence, crime, or disorderly conduct.

(c)   The proposed activity will not entail unusual, extraordinary, or burdensome expense or police operation by the city.

(d)   The facilities desired have not been reserved for another use at the day and hour required in the application.

(3)   Within ten days after receipt of an application the Recreation Programs Administrator shall apprise an applicant in writing of his reasons for refusing a permit.  Any aggrieved person shall have the right to appeal in writing within five days to the City Commission, which shall consider the application under the standards set forth in (B) (2) and sustain or overrule the Recreation Program Administrator's decision within 20 days.  The decision of the City Commission shall be final.

(4)   A permittee shall be bound by all park and municipal beach rules and regulations and all applicable ordinances as fully as though they were inserted in the permits.

(5)   The group, association, or organization to whom a permit is issued shall be liable for any loss, damage, or injuries sustained by any person whatever by reason of the negligence of the group, association, or organization to whom the permit is issued.  The application for a permit

may contain a requirement for an indemnity bond to protect the city from any liability of any kind or character and to protect city property from damage.

(6)   The Recreation Programs Administrator shall have the authority to revoke a permit upon a finding of violation of any rule or ordinance, or upon good cause shown.

(Ord. 81-31, passed 1-27-81; Am. Ord. 89-41, passed 2-21-89; Am. Ord. 2012-12, passed 11-22-11) Penalty, see § 10.99

## § 98.14  BEACH/PEDESTRIAN ACCESS WAY.

Beach/pedestrian access way includes the following described property.

(A)   Southeast 2nd Street.  The 50-foot wide right-of-way of Southeast 2nd Street extending from the east right-of-way line of Briny Avenue to the Atlantic Ocean.

(B)   Southeast 4th Street.  The 50-foot wide right-of-way of Southeast 4th Street extending from the east right-of-way line of Briny Avenue to the Atlantic Ocean.

(C)   Southeast 6th Street.  The 50-foot wide right-of-way of Southeast 6th Street extending from the east right-of-way line of Briny Avenue to the Atlantic Ocean.

(D)   Southeast 8th Street.  The 50-foot wide right-of-way of Southeast 8th Street extending from the east right-of-way line of Briny Avenue to the Atlantic Ocean.

(E)   Southeast 12th Street.  The 46-foot wide right-of-way of Southeast 12th Street extending from a line across the right-of-way at the western face of the existing simulated coral rock wall, eastward to the Atlantic Ocean.

(F)   Northeast 16th Street.  The 50-foot wide right-of-way of Northeast 16th Street from a line extending across the right-of-way at the western face of the existing simulated coral rock wall, eastward to the Atlantic Ocean.

(G)   Northeast 13th Street.  The 50-foot wide right-of-way of Northeast 13th Street from a line extended across the right-of-way at the face of the existing simulated coral rock wall, eastward to the Atlantic Ocean.

(H)   Northeast 10th Street.  The 25-foot wide right-of-way of Northeast 10th Street lying east of the existing bulkhead and extending to the Atlantic Ocean.

(Ord. 81-31, passed 1-27-81; Am. Ord. 2014-27, passed 2-25-14)

*Cross-reference:*

*Hours of operation, see § 98.13 (A)*

## § 98.15  RESIDENCY AND EMPLOYEE BENEFITS.

(A)   *Residency benefits.*  The city, in its sole discretion, when an individual requests and during any period of time an individual enjoys the benefits of a residency membership or residency rate for any public event may require the individual to present evidence of residency.

Case 0:18-cv-62489-BB   Document 1   Entered on FLSD Docket 10/17/2018   Page 26 of 46

Print

Pompano Beach, Florida Code of Ordinances

## § 10.99  GENERAL PENALTY.

(A)   It shall be unlawful for any person to violate or fail to comply with any provision of this code and where no specific penalty is provided, the violation of any provision of this code shall be punishable by a fine not exceeding $500, or imprisonment for a term not exceeding 60 days, or by both fine and imprisonment provided, however, that no penalty shall be imposed that is greater than the penalty imposed by state statutes regulating similar conduct. Each day any violation of any provision of this code shall continue shall constitute a separate offense.

(B)   Upon the sentencing of any defendant for a violation of the City's Code of Ordinances, a judge of the County Court is hereby authorized in his or her discretion, to sentence a defendant to:

(1)   A probationary period of such length and with such conditions as he or she sees fit, and as may be permitted by law.

(2)   Restitution, to be determined in accordance with the provisions set forth in F.S. § 775.089, as currently written, or as may be amended.

(C)   As a part of the conditions of probation, a judge of the County Court is hereby authorized to assess a defendant the costs of prosecution of a case, including all investigative costs incurred by the city, and attorney's fees of the prosecuting attorney for the city.

(D)   In all cases where a violation of the City's Code of Ordinances has been found by a judge of the County Court, whether or not an adjudication is made, the Court is authorized to assess a defendant the costs of prosecution of a case, including all investigative costs incurred by the city, and attorney's fees of the prosecuting attorney for the city.

(E)   In all cases of any suspected or alleged violation of this Code or any other municipal law or ordinance, the suspect or alleged violator shall be subject to immediate arrest and confinement, subject to release upon posting bond whenever applicable.  A summons to appear in court may be issued by the arresting officer in lieu of actual arrest and confinement, except where it appears doubtful whether the violator will appear pursuant to a written citation or notice, or where the violation is willful, wanton and/or deliberate.  In no event shall such summons be considered a matter of right or privilege.

('58 Code, § 1.08) (Am. Ord. 95-5, passed 10-11-94; Am. Ord. 96-20, passed 11-28-95; Am. Ord. 2001-76, passed 7-24-01; Am. Ord. 2004-24, passed 2-24-04)

Select Year: 2016 ☑ Go

## The 2016 Florida Statutes

| Title XI | Chapter 162 | View Entire |
|---|---|---|
| COUNTY ORGANIZATION AND | COUNTY OR MUNICIPAL CODE | Chapter |
| INTERGOVERNMENTAL RELATIONS | ENFORCEMENT | |

**PART II**

**SUPPLEMENTAL COUNTY OR MUNICIPAL CODE**

**OR ORDINANCE ENFORCEMENT PROCEDURES**

162.21  Enforcement of county or municipal codes or ordinances; penalties.

162.22  Designation of enforcement methods and penalties for violation of municipal ordinances.

162.23  Notice to appear.

162.30  Civil actions to enforce county and municipal ordinances.

Copyright © 1995-2017 The Florida Legislature • Privacy Statement • Contact Us



Select Year:   2016 ▾   Go

# The 2016 Florida Statutes

| Title XI | Chapter 162 | View Entire |
|----------|-------------|-------------|
| COUNTY ORGANIZATION AND INTERGOVERNMENTAL RELATIONS | COUNTY OR MUNICIPAL CODE ENFORCEMENT | Chapter |

**162.21   Enforcement of county or municipal codes or ordinances; penalties.—**

(1)   As used in this section, "code enforcement officer" means any designated employee or agent of a county or municipality whose duty it is to enforce codes and ordinances enacted by the county or municipality.

(2)   A county or a municipality may designate certain of its employees or agents as code enforcement officers. The training and qualifications of the employees or agents for such designation shall be determined by the county or the municipality. Employees or agents who may be designated as code enforcement officers may include, but are not limited to, code inspectors, law enforcement officers, animal control officers, or firesafety inspectors. Designation as a code enforcement officer does not provide the code enforcement officer with the power of arrest or subject the code enforcement officer to the provisions of ss. 943.085-943.255. Nothing in this section amends, alters, or contravenes the provisions of any state-administered retirement system or any state-supported retirement system established by general law.

(3)(a)   A code enforcement officer is authorized to issue a citation to a person when, based upon personal investigation, the officer has reasonable cause to believe that the person has committed a civil infraction in violation of a duly enacted code or ordinance and that the county court will hear the charge.

(b)   Prior to issuing a citation, a code enforcement officer shall provide notice to the person that the person has committed a violation of a code or ordinance and shall establish a reasonable time period within which the person must correct the violation. Such time period shall be no more than 30 days. If, upon personal investigation, a code enforcement officer finds that the person has not corrected the violation within the time period, a code enforcement officer may issue a citation to the person who has committed the violation. A code enforcement officer does not have to provide the person with a reasonable time period to correct the violation prior to issuing a citation and may immediately issue a citation if a repeat violation is found or if the code enforcement officer has reason to believe that the violation presents a serious threat to the public health, safety, or welfare, or if the violation is irreparable or irreversible.

(c)   A citation issued by a code enforcement officer shall be in a form prescribed by the county or the municipality and shall contain:

1.   The date and time of issuance.

2.   The name and address of the person to whom the citation is issued.

3.   The date and time the civil infraction was committed.

4.   The facts constituting reasonable cause.

5.   The number or section of the code or ordinance violated.

6.   The name and authority of the code enforcement officer.

7.   The procedure for the person to follow in order to pay the civil penalty or to contest the citation.

8.   The applicable civil penalty if the person elects to contest the citation.

9.   The applicable civil penalty if the person elects not to contest the citation.

10.   A conspicuous statement that if the person fails to pay the civil penalty within the time allowed, or fails to appear in court to contest the citation, the person shall be deemed to have waived his or her right to contest the citation and that, in such case, judgment may be entered against the person for an amount up to the maximum civil penalty.

(4)   After issuing a citation to an alleged violator, a code enforcement officer shall deposit the original citation and one copy of the citation with the county court.

(5)   A county or a municipality is authorized to enforce codes and ordinances under the provisions of this section and may enact an ordinance establishing procedures for the implementation of such provisions, including a schedule of violations and penalties to be assessed by code enforcement officers. If a county or municipality chooses to enforce codes or ordinances under the provisions of this section, each code or ordinance or the ordinance enacted by the county or municipality establishing procedures for implementation of this section shall provide:

(a)   That a violation of a code or an ordinance is a civil infraction.

(b)   A maximum civil penalty not to exceed $500.

(c)   A civil penalty of less than the maximum civil penalty if the person who has committed the civil infraction does not contest the citation.

(d)   For the issuance of a citation by a code enforcement officer who has reasonable cause to believe that a person has committed an act in violation of a code or an ordinance.

(e)   For the contesting of a citation in county court.

(f)   Such procedures and provisions as are necessary to provide for the enforcement of a code or an ordinance under the provisions of this section.

(6)   Any person who willfully refuses to sign and accept a citation issued by a code enforcement officer shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

(7)   The provisions of this part shall not apply to the enforcement pursuant to ss. 553.79 and 553.80 of the Florida Building Code adopted pursuant to s. 553.73 as applied to construction, provided that a building permit is either not required or has been issued by the county or the municipality.

(8)   The provisions of this section are additional and supplemental means of enforcing county or municipal codes or ordinances and may be used for the enforcement of any code or ordinance, or for the enforcement of all codes and ordinances. Nothing contained in this section shall prohibit a county or municipality from enforcing its codes or ordinances by any other means.

**History.**—s. 11, ch. 89-268; s. 7, ch. 94-291; s. 1444, ch. 95-147; s. 3, ch. 96-385; s. 4, ch. 98-287; s. 115, ch. 2000-141; s. 35, ch. 2001-186; s. 4, ch. 2001-372.

Copyright © 1995-2017 The Florida Legislature • Privacy Statement • Contact Us

lawfully executed by any valid method. This section shall apply retroactively.

History.—Am. H.J.R. 3505, 1998; adopted 1998; Am. H.J.R. 951, 2001; adopted 2002.

**SECTION 18.   Administrative penalties.—**No administrative agency, except the Department of Military Affairs in an appropriately convened court-martial action as provided by law, shall impose a sentence of imprisonment, nor shall it impose any other penalty except as provided by law.

History.—Am. proposed by Constitution Revision Commission, Revision No. 13, 1998, filed with the Secretary of State May 5, 1998; adopted 1998.

**SECTION 19.   Costs.—**No person charged with crime shall be compelled to pay costs before a judgment of conviction has become final.

**SECTION 20.   Treason.—**Treason against the state shall consist only in levying war against it, adhering to its enemies, or giving them aid and comfort, and no person shall be convicted of treason except on the testimony of two witnesses to the same overt act or on confession in open court.

**SECTION 21.   Access to courts.—**The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.

**SECTION 22.   Trial by jury.—**The right of trial by jury shall be secure to all and remain inviolate. The qualifications and the number of jurors, not fewer than six, shall be fixed by law.

**SECTION 23.   Right of privacy.—**Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.

History.—Added, C.S. for H.J.R. 387, 1980; adopted 1980; Am. proposed by Constitution Revision Commission, Revision No. 13, 1998, filed with the Secretary of State May 5, 1998; adopted 1998.

**SECTION 24.   Access to public records and meetings.—**

(a)   Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution. This section specifically includes the legislative, executive, and judicial branches of government and each agency or department created thereunder; counties, municipalities, and districts; and each constitutional officer, board, and commission, or entity created pursuant to law or this Constitution.

(b)   All meetings of any collegial public body of the executive branch of state government or of any collegial public body of a county, municipality, school district, or special district, at which official acts are to be taken or at which public business of such body is to be transacted or discussed, shall be open and noticed to the public

and meetings of the legislature shall be open and noticed as provided in Article III, Section 4(e), except with respect to meetings exempted pursuant to this section or specifically closed by this Constitution.

(c)   This section shall be self-executing. The legislature, however, may provide by general law passed by a two-thirds vote of each house for the exemption of records from the requirements of subsection (a) and the exemption of meetings from the requirements of subsection (b), provided that such law shall state with specificity the public necessity justifying the exemption and shall be no broader than necessary to accomplish the stated purpose of the law. The legislature shall enact laws governing the enforcement of this section, including the maintenance, control, destruction, disposal, and disposition of records made public by this section, except that each house of the legislature may adopt rules governing the enforcement of this section in relation to records of the legislative branch. Laws enacted pursuant to this subsection shall contain only exemptions from the requirements of subsections (a) or (b) and provisions governing the enforcement of this section, and shall relate to one subject.

(d)   All laws that are in effect on July 1, 1993 that limit public access to records or meetings shall remain in force, and such laws apply to records of the legislative and judicial branches, until they are repealed. Rules of court that are in effect on the date of adoption of this section that limit access to records shall remain in effect until they are repealed.

History.—Added, C.S. for H.J.R.'s 1727, 863, 2035, 1992; adopted 1992; Am. S.J.R. 1284, 2002; adopted 2002.

**[1]SECTION 25.   Taxpayers' Bill of Rights.—**By general law the legislature shall prescribe and adopt a Taxpayers' Bill of Rights that, in clear and concise language, sets forth taxpayers' rights and responsibilities and government's responsibilities to deal fairly with taxpayers under the laws of this state. This section shall be effective July 1, 1993.

History.—Proposed by Taxation and Budget Reform Commission, Revision No. 2, 1992, filed with the Secretary of State May 7, 1992; adopted 1992.
[1]Note.—This section, originally designated section 24 by Revision No. 2 of the Taxation and Budget Reform Commission, 1992, was redesignated section 25 by the editors in order to avoid confusion with section 24 as contained in H.J.R.'s 1727, 863, 2035, 1992.

**SECTION 26.   Claimant's right to fair compensation.—**

(a)   Article I, Section 26 is created to read "Claimant's right to fair compensation." In any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000.00 in all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement, or otherwise, and regardless of the number of defendants. The claimant is entitled to 90% of all damages in excess of $250,000.00, exclusive of reasonable and customary costs and regardless of the number of defendants. This provision is self-executing and does not require implementing legislation.

(b)   This Amendment shall take effect on the day following approval by the voters.

History.—Proposed by Initiative Petition filed with the Secretary of State September 8, 2003; adopted 2004.

Exhibit 1

B. Deterrence and the Exclusionary Rule | 85

C. Qualified Immunity Doctrine | 89

III. Holding the Line: Why the Inclination Must Be Resisted | 90

A. Rule of Law | 90

B. Separation of Powers | 95

C. Legislative Accountability | 101

IV. Responding to the Challenge | 103

Conclusion | 109

## *70 Introduction

Police officers, like members of the public at large, can make mistakes, including relative to the scope and content of laws. Police mistakes of law, however, differ in kind and consequence. When police stop or arrest an individual based on a mistaken legal understanding, they not only violate their sworn duty to enforce the law but also effectuate an unlawful deprivation of physical liberty. Historically, as a result, police mistakes of law have been condemned by courts, triggering first tort liability,[1] and later application of the exclusionary rule, based on a finding that the seizure was unreasonable for Fourth Amendment purposes.[2]

Of late, however, courts have shown increasing willingness to excuse police mistakes of law, especially with respect to the myriad low-level offenses that play a staple role in modern policing. The Eighth Circuit, D.C. Circuit, and several state appellate courts now uphold police stops and arrests premised on *71 what they deem objectively reasonable police mistakes of law.[3] As a consequence, police are permitted to seize an individual for conduct that does not violate positive law and, with the exclusionary rule not at play, use the seizure to secure evidence in support of a prosecution for an unrelated offense of a more serious nature (typically involving guns or drugs).

Lawless behavior by police is, of course, not unprecedented. During the first decades of the twentieth century, studies repeatedly highlighted the widespread incidence of illegal seizures,[4] backed by the Orwellian assertion that police needed to engage in "illegality . . . to preserve legality."[5] The excesses, which over time inspired major public concern,[6] figured centrally in the Warren Court's criminal procedure revolution, with Mapp v. Ohio, the watershed 1961 decision

Emory Law Journal excerpt

## B. Substantive Law

Traditionally, courts have been far less forgiving of police mistakes of substantive law. As the Michigan Supreme Court observed in 1885: "An officer of justice is bound to know what the law is, and if the facts on which he proceeds, if true, would not justify action under the law, he is a wrong-doer." Police mistakes of law, even those based on what might be thought a reasonable misunderstanding, triggered tort liability.

More recently, police mistakes of law have been deemed unreasonable under the Fourth Amendment. While police are forgiven for their reasonable mistakes of fact, they are not forgiven for their mistakes of substantive law —even if reasonable. A seizure based on a "belief that a law has been broken," as the Seventh Circuit has noted, "when no violation actually occurred, is not objectively reasonable," triggering application of the exclusionary rule.

Today, however, this principled position is showing signs of weakening. In the Eighth Circuit, the vanguard of the shift, police can make "objectively reasonable" mistakes of law. Even though an individual's conduct violates no law, a seizure is reasonable under the Fourth Amendment if a reviewing court finds that the officer operated under an objectively reasonable legal misunderstanding. Officers, the Eighth Circuit avers, need not interpret "laws with the subtlety and expertise of a criminal defense attorney."

In assessing the objective reasonableness of police mistakes of law, courts in the Eighth Circuit attach exculpatory importance to a wide array of circumstances, including the fact that officers received training on the erroneous legal understanding or that the law was erroneously enforced by police in the past based on "common knowledge." Police also act reasonably (and hence constitutionally) if they mistakenly enforce a law lacking a requisite "level of clarity" that has not yet been interpreted by the courts.

According to the Eighth Circuit, assessment of whether a legal mistake is objectively reasonable "is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." Even if a law "technically" does not forbid the behavior in question, a stop or arrest is nonetheless reasonable. Applying the foregoing, the Eighth Circuit in *United States v. Martin*, for instance, upheld a traffic stop based on a law requiring that vehicles be equipped with "a stop light" when the officer misunderstood the law to require two functioning lights, leading to discovery of marijuana and a federal felony conviction.

In addition to the Eighth Circuit, the D.C. Circuit and state appellate courts in Georgia, Mississippi, Ohio, and South Dakota condone what they consider reasonable police mistakes of law. In Ohio, for instance, an officer's mistake of law is a "minor transgression," and in Georgia, a seizure is permitted when "the defendant's actions [are] not a crime according to a technical legal definition or distinction determined to exist in the penal statute." An officer need not "determine on the spot such matters as . . . the legal niceties in definition of a certain crime, for these are matters for the courts." Applying this standard of objective reasonableness, the Mississippi Supreme Court has, for instance, upheld a stop for a speeding violation even though the relevant law was not applicable because no workers were present in the construction zone at the time (1:30 a.m.).

Courts have also forgiven mistakes when police invoke other jurisdictions' laws as justifications for seizures; *Travis v. State* affords an example. In *Travis*, an Arkansas deputy county sheriff stopped defendant's Texas-registered truck because it failed to display an expiration date sticker on its license plate, based on the deputy's incorrect belief that Texas (like Arkansas) required such stickers. The Arkansas Supreme Court condoned the stop and refused to exclude an illegal firearm discovered in an ensuing search, finding that the deputy "reasonably, albeit erroneously" interpreted the Texas law upon which the stop was based. The First District of the California Court of Appeal has adopted a similar approach, forgiving police mistakes of other states' vehicle registration laws, deeming such mistakes reasonable when the vehicle is from a state not geographically contiguous to California or when the foreign state's motorists do not routinely drive on California roads.

Finally, signs of weakening judicial resolve are evident in other contexts. The caselaw provides numerous examples of courts expressing uncertainty over whether the traditional view should be followed. Likewise, courts regularly forgive admitted police mistakes of law when an alternative legal basis exists to support a seizure, even if not identified by police, on the reasoning that police need not "have a precise appreciation of the niceties of the law."

http://law.emory.edu/elj/content/volume-61/issue-1/articles/police-mistakes-of-law.html

COURT DISPOSITION ORDER IN AND FOR BROWARD COUNTY, FLORIDA

2210 Central                          12/07/2015/ 8:15AM/Arraignment/11/19/2015

DATE___/___/___ CASE NO 15011384MM10A       ARREST NO PB15002568  BCCN NO 0590262

State of Florida vs. Lacorazza, Thomas James
Cash Bond/Surety_____ Amount $ 100  Estreated_____ Vacated_____ Return to Dep
Cash Bond/Surety_____ Amount $_____ Estreated_____ Vacated_____ Return to Dep

[ ] Magistrate      [ ] First VOP              [ ] Convicted by Jury_____  [ ] Adj. Guilty_____
[ ] Arraignment     [ ] Final VOP              [ ] Convicted by Court_____  [ ] Adj. Withheld_____
[ ] Change of Plea  [ ] Admits/Denies Allegations [ ] Acq. by Jury_____  [ ] Dismissed_____
[X] Trial by Jury   [ ] Guilty                 [ ] Acq. by Court_____  [ ] Nolle Pros_____
[ ] Trial by Court  [ ] No Contest             [ ] Directed Verdict_____ [ ] No Info_____
                                               [ ] Judgment of Acquittal_____

CHARGES: 1 Resist/Obstruct W/O Violence (060)        _____
_____        _____
_____        _____
_____        _____

SENTENCE:
COUNT(S)_____Reporting/Administrative Probation:_____months with special conditions:
[ ] DUI School Level_____
[ ] License suspended_____
[ ]_____Days immobilization by:_____
[ ] Random breath/urine analysis at defendant's expense
[ ] May work off fine/costs at $_____per hour
[ ] May buy out community service at $_____per hour
[ ] Hours of community service_____
[ ] No alcohol or intoxicants while on probation
[ ] AA/NA meeting(s) per week_____  [ ]Evaluation, treatment and therapy, if necessary
[ ] Pay all outstanding fine/costs on Driver's License Record
[ ] Time served_____days on Count(s)_____
[ ]_____Days Broward County Jail with credit for _____days time served
[ ]No contact directly/indirectly with victim(s) or victim(s) family or others listed below
[ ]All fines/costs are separate and apart from probation
[ ]All fines/costs imposed are a condition of probation on Count(s):_____
[ ]All special conditions of probation must be met by the _____month of probation_____
[ ]DHSMV is directed to revoke defendant's license for 1 year pursuant to F.S 322.055
[ ]Anger Management_____
[ ]Interlock Device_____
[ ] Justice for life [ ] PTE  [ ] MADD/Victim Impact Panel [ ] Shoplifter's Program_____
[ ]$_____COS waived/imposed
[X]Partial payments accepted
[ ]Fines/cost converted to civil lien/judgment
[ ]Probation: Revoked-Terminated-Reinstated_____
[ ]Early termination of probation upon completion of all conditions
[ ]DDS_____hours
[ ]Other:_____

_____
_____

JUDGE:_____    DEPUTY CLERK:_____
2210  MM - Judge Mary Rudd Robinson                      Revised 06/2015



Law Office of the

# PUBLIC DEFENDER

SEVENTEENTH JUDICIAL CIRCUIT

BROWARD COUNTY

HOWARD FINKELSTEIN
PUBLIC DEFENDER

BROWARD COUNTY COURTHOUSE
201 S.E. 6TH STREET, ROOM 3872
FORT LAUDERDALE, FLORIDA 33301
TELEPHONE (954) 831-8650
SUNCOM 454-8650
This Writer's Phone Number: (954) 831-6766

April 18, 2017

THOMAS J LACORAZZA
Arrest Number:  PB15002568
Location:  WOM/D6

      **Re:**    **State of Florida vs.  THOMAS J LACORAZZA**
      **Case No.:  15011384MM10A**

Dear MR LACORAZZA:

      Please be advised that I have been assigned to handle your case.

      Either I or someone from my office will come to the jail to interview you as soon as possible.  If you are not contacted within a reasonable time, please call (954) 831-6766 and ask for the undersigned attorney.

      Until that time, please do not talk with anyone or write any letters to anyone about the facts of your case.  Please be advised that if you place any calls from the jail, those calls are tape recorded, monitored and will be used against you in your case. Do not speak to anyone about your case, especially over the jail phones.

      Please do not contact any witnesses in your case without consulting with me. Contacting witnesses or causing others to contact witnesses may result in those witnesses' statements being admitted at trial, even if the witness does not appear to testify.

      If any police officers want to talk with you, about your case, do not talk with them, and tell them to contact me.

            Sincerely,

            ALEJANDRO J VARGAS, Esq.
            Assistant Public Defender



**HOWARD FINKELSTEIN**
**PUBLIC DEFENDER**

Law Office of the

# PUBLIC DEFENDER

**SEVENTEENTH JUDICIAL CIRCUIT**

**BROWARD COUNTY**

BROWARD COUNTY COURTHOUSE
201 S.E. 6TH STREET, ROOM 3872
FORT LAUDERDALE, FLORIDA 33301
TELEPHONE (954) 831-8650
SUNCOM 454-8650
This Writer's Phone Number: (954) 831-6766

THOMAS J LACORAZZA
**Arrest Number:  PB15002568**
**Location:  WOM/D6**

# PAYMENT DUE: $ 50.00
**Re:  Case No.  15011384MM10A**

At the time the Public Defender was appointed in the above case, the court ordered payment of a Public Defender Application fee of $ 50.00.

For a felony case, please bring or mail $50.00 in either cashier's check or money order made payable to the Broward County Clerk of Court to the following address:

> Broward County Clerk of Court
> Broward County Courthouse
> 201 SE Sixth Street, Room 160
> Ft. Lauderdale, FL   33301

For a traffic/misdemeanor case, please bring or mail $50.00 in either, cashier's check or money order payable to the Broward County Clerk Court to the following address:

> Broward County Clerk of Court - in person
> Broward County Courthouse
> 201 SE Sixth Street, Room 130
> Ft. Lauderdale, FL   33301

> Broward County Clerk of Court - by mail
> Broward County Courthouse
> P.O. Box 14610
> Ft. Lauderdale, FL   33302-4786

Please note the Clerk will not accept a personal check.  You may also pay by credit card in person or online at www.browardclerk.org.

You may disregard this letter if this fee has already been paid.  If you have any questions regarding this fee, please call (954) 831-6766.

**THE FAILURE TO PAY THE PUBLIC DEFENDER APPLICATION FEE MAY RESULT IN A LIEN BEING PLACED AGAINST YOU OR YOUR PROPERTY.**



Law Office of the

# PUBLIC DEFENDER

SEVENTEENTH JUDICIAL CIRCUIT

BROWARD COUNTY

HOWARD FINKELSTEIN
PUBLIC DEFENDER

BROWARD COUNTY COURTHOUSE
201 S.E. 6TH STREET, ROOM 3872
FORT LAUDERDALE, FLORIDA 33301
TELEPHONE (954) 831-8650
SUNCOM 454-8650
This Writer's Phone Number (954) 831-8690

June 22, 2017

THOMAS LACORAZZA
Arrest Number: PB15002568
Location: WOM-D6

**Re:** **State of Florida vs. THOMAS LACORAZZA**
**Case No.: 15011385MO10A**

Dear MR LACORAZZA:

Please be advised that I have been assigned to handle your case.

Either I or someone from my office will come to the jail to interview you as soon as possible. If you are not contacted within a reasonable time, please call (954) 831-8690 and ask for the undersigned attorney.

Until that time, please do not talk with anyone or write any letters to anyone about the facts of your case. Please be advised that if you place any calls from the jail, those calls are tape recorded, monitored and will be used against you in your case. Do not speak to anyone about your case, especially over the jail phones.

Please do not contact any witnesses in your case without consulting with me. Contacting witnesses or causing others to contact witnesses may result in those witnesses' statements being admitted at trial, even if the witness does not appear to testify.

If any police officers want to talk with you, about your case, do not talk with them, and tell them to contact me.

Sincerely,

ALEJANDRO J VARGAS, Esq.
Assistant Public Defender



**HOWARD FINKELSTEIN**
**PUBLIC DEFENDER**

Law Office of the

# PUBLIC DEFENDER

**SEVENTEENTH JUDICIAL CIRCUIT**

**BROWARD COUNTY**

BROWARD COUNTY COURTHOUSE
201 S.E. 6TH STREET, ROOM 3872
FORT LAUDERDALE, FLORIDA 33301
TELEPHONE (954) 831-8650
SUNCOM 454-8650
This Writer's Phone Number: (954) 831-8690

THOMAS LACORAZZA
**Arrest Number:  PB15002568**
**Location:  WOM-D6**

# PAYMENT DUE: $ 50.00

**Re:  Case No.  15011385MO10A**

At the time the Public Defender was appointed in the above case, the court ordered payment of a Public Defender Application fee of $ 50.00.

For a felony case, please bring or mail $50.00 in either cashier's check or money order made payable to the Broward County Clerk of Court to the following address:

      **Broward County Clerk of Court**
      **Broward County Courthouse**
      **201 SE Sixth Street, Room 160**
      **Ft. Lauderdale, FL   33301**

For a traffic/misdemeanor case, please bring or mail $50.00 in either, cashier's check or money order payable to the Broward County Clerk Court to the following address:

      **Broward County Clerk of Court - in person**
      **Broward County Courthouse**
      **201 SE Sixth Street, Room 130**
      **Ft. Lauderdale, FL   33301**

      **Broward County Clerk of Court - by mail**
      **Broward County Courthouse**
      **P.O. Box 14610**
      **Ft. Lauderdale, FL   33302-4786**

Please note the Clerk will not accept a personal check.  You may also pay by credit card in person or online at www.browardclerk.org.

You may disregard this letter if this fee has already been paid.  If you have any questions regarding this fee, please call (954) 831-8690.

**THE FAILURE TO PAY THE PUBLIC DEFENDER APPLICATION FEE MAY RESULT IN A LIEN BEING PLACED AGAINST YOU OR YOUR PROPERTY.**

Exhibit 14

Filing # 34464104 E-Filed 11/16/2015 08:58:59 AM

**IN THE COUNTY COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, STATE OF FLORIDA**

**THE STATE OF FLORIDA**                    **INFORMATION FOR**

**vs.**

**THOMAS JAMES LACORAZZA**          **RESIST OBSTRUCT POLICE OFFICER
WITHOUT VIOLENCE**

**IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA**

MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **THOMAS JAMES LACORAZZA** on the **29TH** day of **OCTOBER** A.D. **2015**, in the County and State aforesaid, did unlawfully obstruct or oppose Vicente San Roman, Jordano Bahamonde and Kathy Jackson-Hunsucker, duly qualified and legally authorized enforcement officers of the Broward Sheriff's Office in the lawful execution of a legal duty then being performed by the said officers, to-wit:  Arrest of defendant, in that the said Defendant did refuse to comply with lawful commands and did struggle with said deputies without the said Defendant offering or doing violence to the person of the said officers, contrary to F.S. 843.02,

JZ/jp/11/12/15

**STATE OF FLORIDA vs.   THOMAS JAMES LACORAZZA    INFORMATION, Page 2**
**IDENTIFYING DATA**
**09/23/83, W/M**


COUNTY OF BROWARD
STATE OF FLORIDA


      Personally appeared before me **JILL ZILUCK** duly appointed as an Assistant State Attorney of the 17th Judicial Circuit of Florida by MICHAEL J. SATZ, State Attorney of said Circuit and Prosecuting Attorney for the State of Florida in the County of Broward, who being first duly sworn, says that the allegations as set forth in the foregoing Information are based upon facts that have been sworn to or certified as true and which, if true, would constitute the offense(s) therein charged, and that this prosecution is instituted in good faith.

_____
Assistant State Attorney, 17th Judicial Circuit of Florida

SWORN TO AND SUBSCRIBED before me this **12TH** day of **NOVEMBER**, A.D. **2015**
HOWARD C. FORMAN, Clerk of the Circuit and County Courts

Clerk of the County Court, 17th Judicial Circuit,
Broward County, Florida

By _____
    Deputy Clerk

To the within Information, Defendant pleaded _____.

HOWARD C. FORMAN, Clerk of the Circuit and County Courts

Clerk of the County Court, 17th Judicial Circuit,
Broward County, Florida

By _____
    Deputy Clerk

Fed. R. Civ. P. Rule 26(a)(1)(A)(i)




-Thomas James Lacorazza, Jr.

980 Greenwood Rd.

Weston, FL 33327

   no phone number


   -Documents and information pertaining to incident described in complaint



Fed. R. Civ. P. Rule 26(a)(3)(A)(ii)



-Plaintiff has no witness(es) to call on for testimony



Fed. R. Civ. P. Rule 26(a)(1)(A)(ii)/26(a)(3)(A)(iii)



1. Exhibit A: "Document A"; outlined claim of complaint
2. Exhibit B: USB Flash Drive Containing Images of "Public Beach" "Beach Access" bridge and surrounding area where incident transpired
3. Exhibit 1: Transcription of events on morning of October 29th, 2015
4. Exhibit 2: Pompano Beach Code of Ordinances sections 98.01

6.  Exhibit 4: Pompano Beach Code of Ordinances sections 98.13

7.  Exhibit 5: Pompano Beach Code of Ordinances sections 10.99

8.  Exhibit 6: F.S.A. 162.21

9.  Exhibits 7: Article I, section 18, FL Constitution

10. Exhibit 8: Northwest Medical Center patient care report

11. Exhibit 9: Emory Law Journal, 61 Emory L.J. 69; quotes and references

12. Exhibit 10: Case # 15011384MM10A disposition document

13. Exhibit 11: Public Defender application fee invoice (case # 15011384MM10A)

14. Exhibit 12: Public Defender application fee invoice (case # 15011385MO10A)

15. Exhibit 13: Westside Regional Medical Center and EMS billing invoices

16. Exhibit 14: State's Information

Fed. R.  Civ. P. Rule 26(a)(1)(A)(iii): Computation of Damages Claimed

Defendant City of Pompano Beach-Relief

Declaratory: *See* Exhibit A ("Document A"), "VI. Prayer for Relief, (1)"

Injunctive: *See* Exhibit A ("Document A"), "VI. Prayer for Relief, (2)"

Compensatory:

1)  Public Defender application fee for municipal ordinance violation allegation (case # 15011385MO10A) - $50.00

2)  Liability, under "Monell Claim", for the two hospital admissions and EMS services between the dates of November 5th, 2015 and November 15th, 2015

EMS- $_____; November _____, 2015: (1*)

EMS- $_____; November _____, 2015: (2*)

Northwest Medical Center- $_____; November _____, 2015: (3*)

Northwest Medical Center- $_____; November _____, 2015: (4*)

shared equally with Defendant Broward Sheriff's Office = 1*, 2*, 3*, and 4* / 2 = $_____

3)  Half of Broward Sheriff's Office calculated Compensatory Relief amount, as policy makers and secondary actors in the incident, for inadequacy of code enforcement training, and malicious prosecution (case #'s 15011384MM10A & 15011385MO10A) = $360,000.00

Broward Sheriff's Office-Relief

Declaratory: *See* Exhibit A ("Document A"), "VI. Prayer for Relief, (1)"

Injunctive: *See* Exhibit A ("Document A"), "VI. Prayer for Relief, (2)"

Compensatory:

1)  Emotional pain and suffering, including the stresses associated with ongoing, pending cases where the potential for a lengthy prison term is a real and absolute possibility;

Constitutional violations effected with callous indifference and reckless disregard for Plaintiff's Rights;

State law violations committed with callous indifference and reckless disregard for Plaintiff's Right to Due Process of Law;

Malicious prosecution;

Year-and-a-half, plus, of legal research and preparations conducted and made, respectively, for the filing and litigating of this action, as well as that of case #'s 150384MM10A and 15011385MO10A prior, and subsequent, to appointment of Public Defender's Office counsel on April 18th, 2017 and June 22nd, 2017 with no formal legal training, education, or otherwise

-*conservative average*: 1hr/day, 5days/wk, 4wks/mo, 18mos = 360hrs * $250.00/hr (maximum hourly attorney compensation rate; F.S.A. 768.28) at 25% (maximum attorney compensation percentage rate) * 2 (culpability and severity of violations multiplier) = $720,000.00;

Physical injuries sustained and the extent thereof in violation of State laws and constitutional Rights of Plaintiff where "objective reasonableness" is absent and deputy sheriff's actions are a clear example of callous indifference and reckless disregard for the Plaintiff's Rights as demonstrated throughout this action and officer's statement during his trial testimony when he proclaimed "I knew he was going to be a problem" (referring to initially seeing Plaintiff walking North on N. Pompano Beach Blvd.), as well as something to the effect of "No, how am I supposed to know all of them? That's a legal question; I'm not a lawyer!" (responding to an inquiry by Plaintiff's criminal defense counsel of whether or not he knows what the prohibited rights-of-way listed in the ordinance the Plaintiff was alleged to have violated for the purposes of his enforcement as the beach area patrol deputy)

-research and preparation for litigation calculation *2 = $1,440,000.00

2) Two hospital admissions and EMS services between the dates of November 5th, 2015 and November 15th, 2015

EMS- $_____; November _____, 2015: (1*)

EMS- $_____; November _____, 2015: (2*)

Northwest Medical Center- $_____; November _____, 2015: (3*)

Northwest Medical Center- $_____; November _____, 2015: (4*)

shared equally with Defendant Broward Sheriff's Office = 1*, 2*, 3*, and 4* / 2 = $_____

Defendant Vicente San Roman-Relief

Declaratory: *See* Exhibit A ("Document A"), "VI. Prayer for Relief, (1)"

Injunctive: *See* Exhibit A ("Document A"), "VI. Prayer for Relief, (2)"

Compensatory: As the direct actor and initiator of state law and constitutional violations effectuated against Plaintiff and for resultant emotional pain and suffering -$25,000.00

Punitive: As the direct actor and inflictor of physical injuries to, sustained by, and executor of excessive force against, Plaintiff without "objectively reasonable" grounds and with "callous indifference and reckless disregard" for Plaintiff's Right and the law -$75,000.00



PRESS FIRMLY TO SEAL



# PRIORITY
## ★ MAIL ★



**UNITED STATES**
**POSTAL SERVICE** ®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

**FROM:** Thomas J. Lacbrazze Jr.
c/o Angela & William Masaro
900 Greenwood Rd.
Weston, FL 33327

**TO:** Clerk's Office
United States District Court
Southern District of Florida
299 E. Broward Blvd. Ste. 108
Ft. Lauderdale, FL 33301

Label 228,

FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT U
ORDER FREE SUPP